## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Aaron Morrow,

Civ. No. 14-3023 (PJS/BRT)

        Petitioner,

v.

**REPORT AND**

Kent Grandlienard,

**RECOMMENDATION**

        Respondent.

Aaron Morrow, OID #236349, MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, *pro se* Petitioner.

Peter R. Marker, Esq., Ramsey County Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge

### INTRODUCTION

Aaron Morrow, a Minnesota inmate serving a life sentence for first-degree premeditated murder and two counts of attempted first-degree murder, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 1.) In his petition, Morrow challenges his state court convictions on three grounds, alleging that: (1) his federal due process rights, as interpreted in *Sandstrom v. Montana*, 442 U.S. 510 (1979), and its progeny, were violated when the prosecution argued in closing that the type of firearm used in the charged offenses was indicative of premeditation and intent; (2) the evidence presented at trial was insufficient to prove the essential elements of premeditation and intent; and (3) the evidence was insufficient to rebut his claim of self-

1

defense.[1] (Doc. No. 1 at 5–8; Doc. No. 2 at 2–18.) The State has moved to dismiss

Morrow's petition on grounds that those three claims are procedurally defaulted and

otherwise meritless. (Doc. No. 11; Doc. No. 12 at 2, 15.) Morrow, in turn, has filed a

motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b), asking

this Court to strike the State's motion to dismiss and then enter a default judgment in his

favor. (Doc. No. 22.) For the reasons discussed below, this Court recommends that

Morrow's motion for default judgment be denied, that the State's motion to dismiss be

granted, and that Morrow's § 2254 petition be denied.

## BACKGROUND

On the night of September 26, 2010, Randy White — a friend of Morrow's —

attended a party in St. Paul, Minnesota.[2] *See State v. Morrow*, 834 N.W.2d 715, 719

(Minn. 2013). After several hours of partying, White noticed that his cell phone was

---

[1]     Morrow's petition, as originally drafted, contained a fourth ground alleging a claim of ineffective assistance of appellate counsel. (Doc. No. 1 at 10; *see also* Doc. No. 2 at 19–28.) Because Morrow had not exhausted all available state court remedies with respect to that claim, as required by 28 U.S.C. § 2254(b), this Court gave him the option of either deleting Ground Four of his petition or having the entire petition dismissed without prejudice. (Doc. No. 20); *see also Rose v. Lundy*, 455 U.S. 509, 510 (1982). Morrow has since filed a motion to formally amend his petition to delete Ground Four. (Doc. No. 21.) Since formal amendment is unnecessary, this Court construes Morrow's motion as a statement of his intent to delete Ground Four from his petition and, accordingly, recommends denial of that motion as moot. (*See* Doc. No. 20 at 6 (ordering Morrow to "inform this Court whether he wishes to delete Ground Four from his federal habeas petition and proceed on his exhausted claims only").)

[2]     Because Morrow is challenging the sufficiency of the evidence to support his convictions, the facts are presented in the light most favorable to the State, with all reasonable inferences from the evidence and credibility choices drawn in favor of the jury's guilty verdict. *See United States v. Mathews*, 761 F.3d 891, 893 (8th Cir. 2014).

missing, contacted Morrow for a ride, and then confronted Joseph Rivera and two of his friends, David Chavez and Gilberto Caldero, about the mislaid phone. *Id.* at 719 & n.1. Following some verbal back and forth, Chavez threatened to beat White up if he continued to ask about the phone; no weapons were displayed or otherwise referenced during the purely verbal confrontation. *Id.* at 719 n.1. When Morrow arrived at the party, he witnessed some of the confrontation between White and Chavez. *Id.* at 719. Morrow and White promptly left the party and drove to Morrow's house, where Morrow retrieved a large bag concealing a semiautomatic AK-47 assault rifle. *Id.* at 719 & n.2. Morrow placed the bag in the trunk of his car and the two men drove back to the party. *Id.*

In the meantime, White learned that he had left his sweater and keys at the party, which were placed outside for him under a nearby tree. *See id.* at 719 n.2. Morrow parked approximately a half-block away from the party, at which point White exited the car to retrieve his belongings. *Id.* at 719 & n.2. At the same time, Rivera, Chavez, and Caldero left the party and began walking to their own vehicle. *Id.* at 719 nn.1–2. Just as White climbed back into Morrow's car, Morrow stepped outside, beckoned the three men to come over, and then raised his semiautomatic rifle, prompting the men to stop and put their hands up. *Id.* at 719 nn.1–2. Morrow pointed his weapon at "center mass" and began shooting, intermittently firing a total 15 shots in the direction of the three men. *Id.* at 719 & n.1, 722. Rivera died at the scene after sustaining approximately seven gunshot wounds. *Id.* at 719. Chavez was shot in the leg as he attempted to flee; Caldero escaped uninjured. *Id.* at 719 & n1. Morrow and White then absconded to Morrow's cousin's

house, where Morrow hid the assault rifle in the garage. *Id.* at 719 & n.2. Morrow told

White not tell anyone about the shooting. *Id.* at 719 n.2.

Morrow was indicted in Minnesota state court on nine counts of murder and

attempted murder, including one count of first-degree premeditated murder and two

counts of attempted first-degree premeditated murder. *See* Minn. Stat. §§ 609.17 and

609.185(a)(1). At trial, Morrow testified on his own behalf and claimed that he acted to

defend both himself and White. *Morrow*, 834 N.W.2d at 720. The jury rejected Morrow's

claim of self-defense and found him guilty on all counts. *Id.* The trial court later

sentenced Morrow to life imprisonment without the possibility of release for the

premeditated murder of Rivera, and two consecutive 15-year sentences for the attempted

first-degree murder of Chavez and Caldero. *Id.*

Morrow appealed his convictions to the Minnesota Supreme Court, raising a total

of nine claims between his counseled appellate brief and *pro se* supplemental brief. (*See*

Doc. No. 13-1 at 3–4, 119–29.) In relevant part, Morrow argued in his *pro se*

supplemental brief that he was prejudiced by the prosecution's focus, both during witness

testimony and in closing argument, on the type and capabilities of the firearm used in the

shooting. (*Id.* at 123–24.) While conceding that the type of firearm "had relevance" to

charges against him, Morrow nevertheless maintained that the level of attention given to

it "had far less probative value than it had in prejudicial value." (*Id.*) Morrow further

claimed that Caldero's trial testimony that he felt like there was going to be a "fight for

his life" demonstrated that Morrow had acted in self-defense or, at the very least, gave

rise to a reasonable doubt about the presence of premeditation. (*Id.* at 124–29.)

4

The Minnesota Supreme Court rejected those claims on the merits and affirmed Morrow's convictions. *Morrow*, 834 N.W.2d at 730. The court found that "[t]he fact that Morrow used a very dangerous weapon is circumstantial evidence that is probative of Morrow's intent to kill." *Id.* After construing Morrow's claim concerning Caldero's testimony "as asserting that there was insufficient evidence of [his] guilt," the court rejected that claim on the ground that "the State presented ample evidence to establish that Morrow acted with premeditation and did not act in self-defense." *Id.* Elsewhere in its opinion, the state supreme court underscored that a finding of premeditation was "strongly support[ed]" by the fact that Morrow "drove to his house, retrieved an AK-47 semiautomatic assault rifle, returned to the party, fired 15 shots at the three victims, pointed the weapon at 'center mass,' failed to render aid to the victims, and hid the weapon after the crime." *Id.* at 722.

Morrow filed his federal habeas petition on July 24, 2014. (Doc. No. 1); *see Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc) ("[A] *pro se* prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court."), *overruled on other grounds by Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008). The following month, U.S. Magistrate Judge Leo Brisbois ordered the State to respond to the petition by filing either an answer or a motion to dismiss within 30 days. (Doc. No. 7.) Thereafter, the State timely filed a motion to dismiss "[p]ursuant to Rule 5 of the Rules Governing [§ 2254] Cases and the comments thereto," along with a supporting memorandum, contending that Morrow's claims were procedurally defaulted and otherwise meritless. (Doc. No. 11; Doc. No. 12 at 2, 15.)

Morrow has responded to the State's motion and filed a motion for default judgment

pursuant to Federal Rule of Civil Procedure 55(b). (Doc. Nos. 18 & 22.)

## DISCUSSION

Before considering the merits of Morrow's § 2254 petition, this Court will address

his motion for default judgment.

## I.      Morrow's Motion for Default Judgment

In both his motion for default judgment and response to the State's motion to

dismiss, Morrow asserts that the State's motion should be struck and, once it is, that he is

entitled to a default judgment in the absence of a surviving response from the State. *See*

Fed. R. Civ. P. 55 (providing that, in civil cases, a default judgment may be entered

"[w]hen a party against whom a judgment for affirmative relief is sought has failed to

plead or otherwise defend"); (Doc. No. 18 at 2–5; Doc. No. 22 at 3–4). Morrow maintains

that the State's motion to dismiss should be struck because: (1) it was improperly filed

pursuant to Rule 5 of the Rules Governing Section 2254 Cases ("Habeas Rules"), "which

actually covers the Answer and the Reply rather than a Motion to Dismiss"; (2) it raises

defenses that "are not valid" under Federal Rule of Civil Procedure 12(b); (3) the State

violated Local Rule 7.1(f)(2) by failing to certify that its supporting memorandum

complied with the applicable word limit and font requirements; and (4) it was improperly

filed before a magistrate judge, instead of a district court judge. (Doc. No. 18 at 2–4;

Doc. No. 22 at 3–6.) Morrow alternatively argues that, even if the State's motion to

dismiss endures, he is still entitled to a default judgment because the State has, pursuant

to Federal Rule of Civil Procedure 8(b)(6), effectively admitted the allegations in his

petition by failing to file an answer to that petition, and admitted the allegations in his response to the motion to dismiss by failing to file a reply. (Doc. No. 22 at 7–13.)

Although the Federal Rules of Civil Procedure may be applied in habeas proceedings where doing so would be appropriate and not inconsistent with any statutory provisions or the Habeas Rules, *see* Rule 12 of the Habeas Rules & accompanying notes, default judgments are strongly disfavored, if not outright condemned, in such proceedings because blindly granting the writ would force the public at large to bear "the risk of releasing prisoners that in all likelihood were duly convicted, or the costly process of retrying them." *See Hale v. Lockhart*, 903 F.2d 545, 548 (8th Cir. 1990) (quoting *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)); *see also Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir. 1994) (explaining that "default judgments are disfavored in habeas corpus cases" because "[r]eleasing a properly convicted prisoner or imposing on the state the costs and uncertainties of retrying him" is a "strong" and often "disproportionate" remedy); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) (noting that "a default judgment is not contemplated in habeas corpus cases"); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons without evidentiary hearings."). And even assuming, for the sake of argument, that a default judgment could ever be warranted in a habeas proceeding, Morrow has not demonstrated that it is warranted here. Nor has he persuaded this Court that the State's motion to dismiss should be struck.

Contrary to Morrow's contentions, Rules 4 and 5 of the Habeas Rules specifically contemplate that the respondent may file a motion to dismiss — as the State did here —

in lieu of a more complete answer to the habeas petition. *See* Rule 4 of the Habeas Rules (providing that if a petition is not summarily dismissed, "the judge must order the respondent to file an answer, *motion, or other response* within a fixed time, or to take other action the judge may order") (emphasis added); Rule 5 of the Habeas Rules advisory committee's note (explaining that a respondent "is not required to file an answer to the petition, unless a judge so orders," and that the court "may require (or permit) the respondent to file a motion [to dismiss]"). Indeed, in order to "leave[] open the possibility that the government's first response . . . is in the form of a pre-answer motion to dismiss the petition," Rule 5 was recently amended to replace the term "answer" with the more generic term "respond." Rule 5 of the Habeas Rules advisory committee's note.

In accordance with Rules 4 and 5, the Court ordered the State to file either an answer or a motion to dismiss by September 15, 2014. (Doc. No. 7.) The State complied with that order, timely filing its motion to dismiss on September 12, 2014, and asserting defenses that are explicitly outlined in Rule 5. (*See* Doc. No. 11); Rule 5 of the Habeas Rules (providing that the response "must state whether any claim in the petition is barred by," among other things, "a failure to exhaust state remedies [or] a procedural bar"). Moreover, the State committed no error in addressing its motion to dismiss to Magistrate Judge Brisbois, as he was the magistrate judge then assigned to the case and, as such, was authorized to issue a report and recommendation on the merits of both that motion and Morrow's petition. *See* 28 U.S.C. § 636(b)(1)(B); D. Minn. LR 72.1(a)(3)(B). While it is true that the State failed to certify that its supporting memorandum complied with the applicable word limits and type size, as required by Local Rule 7.1(f)(2), that minor

technical violation does not warrant striking the State's motion to dismiss, let alone granting Morrow a windfall by entering a default judgment in his favor. *See Bleitner*, 15 F.3d at 653 (explaining that default judgments are not only disfavored in habeas cases, but wholly inappropriate for "merely technical violations"); D. Minn. LR 1.3 ("If an attorney . . . or party violates these rules . . ., the court may impose appropriate sanctions as need to protect the parties and the interests of justice.").

Finally, Morrow's reliance on Federal Rule of Civil Procedure 8(b)(6), which provides that "[a]n allegation . . . is admitted if a responsive pleading is required and the allegation is not denied," is misplaced. Rule 81(a)(4) of the Federal Rules of Civil Procedure states, in relevant part, that the civil rules "apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings . . . is not specified in a federal state [or] the [Habeas Rules]." Pleading practice in habeas proceedings is, however, specified in federal statutes and the Habeas Rules, making Federal Rule of Civil Procedure 8 inapplicable. *See* 28 U.S.C. § 2243; Rules 2 and 5 of the Habeas Rules. In fact, unlike Rule 8(b)(6) of the civil rules, neither Rule 5 of the Habeas Rules nor any federal statute provides that an allegation in a § 2254 petition is deemed admitted if not specifically denied. *See* 28 U.S.C. § 2243; Rule 5 of the Habeas Rules. And even if Rule 8(b)(6) were applicable in habeas proceedings, its reach is limited to situations where "a responsive pleading is required." Fed. R. Civ. P. 8(b)(6). Because the Habeas Rules do not require a state to file a responsive pleading (*i.e.*, an answer) unless ordered to do so, and because the State in this case was permitted to file a motion to dismiss (which is not a responsive pleading), Rule 8(b)(6) does not require that any of Morrow's allegations be

admitted unless denied. *See Tarver v. United States*, 344 F. App'x 581, 583 (11th Cir. 2009).[3] Accordingly, this Court recommends denying Morrow's motion for default judgment, including its subsidiary request to strike the State's motion to dismiss.

## II.     Morrow's Petition for a Writ of Habeas Corpus

### A.  Ground One — Prosecution's Focus on the Type of Firearm

In his first ground for federal habeas relief, Morrow contends that his Fourteenth Amendment right to due process was violated when the prosecution, during closing statements, allegedly misled the jury into believing that the essential elements of premeditation and intent could be inferred from the type of weapon used in the shooting. (Doc. No. 1 at 5; Doc. No. 2 at 2–3.) Morrow bases his due process claim on the Supreme Court's decisions in *Sandstrom v. Montana*, 442 U.S. 510 (1979), *Francis v. Franklin*, 471 U.S. 307 (1985), and *Yates v. Evatt*, 500 U.S. 391 (1991), which collectively hold that jury instructions creating a mandatory presumption, rather than a permissive inference, violate due process when they have the effect of relieving the prosecution of its burden of proving each element of a crime beyond a reasonable doubt. (*See* Doc. No. 2 at 2); *Sandstrom*, 442 U.S. at 519–24; *Francis*, 471 U.S. at 313–14; *Yates*, 500 U.S. at 400–402, 402 n.7. The State, in its motion to dismiss, argues that Morrow has procedurally defaulted his federal due process claim because he did not adequately raise it before the

---

[3]     This Court also notes that Rule 8(b)(6) applies only to well-pleaded factual allegations, not legal conclusions. *See, e.g.*, *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Thus, even if it applied in these proceedings, Morrow is incorrect when he asserts that the State is deemed to have admitted both that its motion to dismiss should be struck and that Morrow is entitled to a default judgment. (*See* Doc. No. 22 at 8–9.) Those are legal conclusions, not factual allegations.

state courts and would now be barred from doing so under state procedural rules. (Doc.

No. 12 at 16.) Alternatively, the State maintains that the claim is meritless because use of

a dangerous weapon is indicative of an intent to kill and the jury was not instructed that

Morrow's use of a firearm created a mandatory presumption of intent. (*Id.* at 16–17.)

A state prisoner may pursue federal habeas relief "only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States." 28

U.S.C. § 2254(a). Before bringing a federal claim in a § 2254 proceeding, however, a

state prisoner must exhaust all available state court remedies by "fairly present[ing]" that

same claim in each appropriate state court, "thereby alerting that court to the federal

nature of the claim" and affording the state an "opportunity to pass upon and correct

alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29

(2004) (quotation omitted) (citing 28 U.S.C. § 2254(b)(1)); *see also Picard v. Connor*,

404 U.S. 270, 276 (1971) (explaining that a state prisoner must "present the state courts

with the *same claim* he urges upon the federal courts") (emphasis added). "It is not

enough that all the facts necessary to support the federal claim were before the state

courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459

U.S. 4, 6 (1982) (citation omitted). A prisoner must alert the state courts to the federal

nature of his claim by "referr[ing] to a specific federal constitutional right, a particular

constitutional provision, a federal constitutional case, or a state case raising a pertinent

federal constitutional issue in a claim before the state courts." *Turnage v. Fabian*, 606

F.3d 933, 936 (8th Cir. 2010) (quotation omitted). While a petitioner need not "cite book

and verse on the federal constitution to satisfy the fair presentment requirement, the

constitutional substance of a claim must be apparent, and the petitioner must have

explicitly referred the state courts to the United States Constitution or federal case law."

*Carney v. Fabian*, 487 F.3d 1094, 1097 n.3 (8th Cir. 2007) (quotation omitted).

When a petitioner fails to properly exhaust his state remedies with respect to a

federal claim, and state procedural rules preclude further attempts at exhaustion, the

claim is considered procedurally defaulted. *Middleton v. Roper*, 455 F.3d 838, 855 (8th

Cir. 2006). Federal courts are barred from reviewing the merits of procedurally defaulted

claims unless the petitioner can demonstrate either "cause for the default and actual

prejudice as a result of the alleged violation of federal law," or that "failure to consider

the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*,

501 U.S. 722, 750 (1991). To fall within the fundamental-miscarriage-of-justice

exception, a petitioner must make a colorable showing of factual, as opposed to legal,

innocence through the presentation of new and reliable evidence. *See Schlup v. Delo*, 513

U.S. 298, 321–24 (1995); *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994).

Morrow did not fairly present his federal due process claim to the state courts. In

his direct appeal before the Minnesota Supreme Court, Morrow argued that the

prosecution's focus on the type of firearm, both during witness testimony and in closing

statements, was "far less probative" than it was prejudicial; at no point did he refer to his

federal due process rights, to *Sandstrom* and its progeny, or to a state or federal case

deciding a *Sandstrom* issue. (Doc. No. 13-1 at 123–24.) He nevertheless contends that he

properly exhausted his federal claim in state court because he "repeatedly noted the

prejudicial effect" of the prosecutor's conduct and "[t]he creation of that prejudice during

trial is a [c]onstitutional claim." (Doc. No. 18 at 8–9.) Merely claiming that a particular prosecutorial action was prejudicial, however, is not enough to exhaust a federal due process claim, let alone one under the "particular analysis developed in cases such as Sandstrom." *See Harless*, 459 U.S. at 5–7 (holding that a state prisoner who argued on direct appeal "that the trial court's instruction on the element of malice was 'erroneous'" had not properly exhausted a constitutional claim based on *Sandstrom*, even where the Sixth Circuit believed that "the due process ramifications" of the prisoner's argument to the state courts "were self-evident") (quotations omitted); *see also Duncan v. Henry*, 513 U.S. 264, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so*, not only in federal court, but in state court.") (emphasis added). Indeed, not even a "general appeal to a constitutional guarantee as broad as due process" is enough to fairly "present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996). Rather, Morrow had to have referred, whether directly or through citation to pertinent state or federal caselaw, to his federal due process rights under *Sandstrom* and its progeny. *See Turnage*, 606 F.3d at 936. Because he did not do so, he has not properly exhausted his claim in state court.

Morrow's failure to fairly present his federal due process claim to the Minnesota Supreme Court means that it is procedurally defaulted. *See id.* ("If a prisoner fails to present his federal claims to the state courts, those claims are generally considered procedurally defaulted."); *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not

raised, will not be considered upon a subsequent petition for postconviction relief.").

Morrow does not attempt to show that he could revive his federal claim in the state

courts, and this Court is satisfied that any such attempt would be futile. *See Powers v.*

*State*, 731 N.W.2d 499, 502 (Minn. 2007) (holding that neither of the two exceptions to

the *Knaffla* bar — "if a novel legal issue is presented" or "the interests of justice require

review" — applied where the prisoner "could have made his arguments previously" and

had "not presented a colorable explanation of why he failed to do so").

This Court is therefore barred from considering the merits of Morrow's

procedurally defaulted claim unless he can demonstrate adequate cause and prejudice, or

that the failure to consider his claim would result in a fundamental miscarriage of justice.

*See Coleman*, 501 U.S. at 750. Morrow makes no attempt to show cause for failing to

present his federal due process claim to the Minnesota Supreme Court. And while he

invokes the fundamental-miscarriage-of-justice exception, he mistakenly believes that it

applies whenever a constitutional violation demands reversal. (Doc. No. 18 at 8.) Instead,

the exception requires a petitioner to make a credible showing of factual, not merely

legal, innocence. *See Schlup*, 513 U.S. at 321–24 (1995); *Anderson*, 25 F.3d at 707.

Morrow has not even alleged that he is factually innocent of shooting at the three victims,

and his claims of insufficient evidence to prove premeditation or a lack of self-defense

raise questions of legal innocence, not factual innocence. *See Pitts v. Norris*, 85 F.3d 348,

350–51 (8th Cir. 1996) (concluding that a claim of insufficient evidence "is one of legal

innocence" and, as such, does not fall within the fundamental-miscarriage-of-justice

exception). Morrow has therefore failed to overcome the procedural default of his due process claim.[4]

### B.  Grounds Two and Three — Insufficient Evidence

In his final two claims for relief, Morrow contends that the prosecution did not present sufficient evidence to prove the essential elements of premeditation and intent, or to disprove his claim of self-defense. (Doc. No. 1 at 7–8; Doc. No. 2 at 4–18.) Relying on Minnesota's heightened standard for convictions based on circumstantial evidence, Morrow argues that the evidence was insufficient to support his convictions for premeditated and attempted premeditated murder because it was "consistent with theories other than the crimes charged," including manslaughter and self-defense. (Doc. No. 1 at 7–8; Doc. No. 2 at 6–13, 18; *see also* Doc. No. 18 at 9.) The State asserts that Morrow's sufficiency claims are not only meritless, but procedurally defaulted because he "did not

---

[4]     Even if this Court could consider the merits of Morrow's due process claim, it would still not merit federal habeas relief. The Minnesota Supreme Court conclusively held, as a matter of state law, that the use of a very dangerous weapon is circumstantial evidence of an intent to kill. *Morrow*, 834 N.W.2d at 730; *see Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law, and [] we are bound by their constructions except in extreme circumstances . . . .") (citations omitted). Nothing in *Sandstrom*, *Francis*, or *Yates* demands otherwise as a matter of federal constitutional law or prevented the prosecution from asking the jury to infer premeditation and intent based on the type of firearm used. Those Supreme Court decisions concerned jury instructions, not prosecutorial statements, and otherwise held that juries generally may be asked to draw permissive inferences from certain predicate facts, such as intent from the use of a dangerous weapon. *See Francis*, 471 U.S. at 314 (explaining that a permissive inference — one "suggest[ing] to the jury a possible conclusion to be drawn if the State proves predicate facts" — "does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved"); *Yates*, 500 U.S. at 402 n.7 ("A permissive presumption merely allows an inference to be drawn and is constitutional so long as the inference would not be irrational.").

cite any authority in support of [them] to the Minnesota Supreme Court, let alone

authority suggesting that his federal constitutional rights were violated in state court."

(Doc. No. 12 at 17.)

Morrow raised a similar claim before the Minnesota Supreme Court, which the

court construed as asserting that there was insufficient evidence of premeditation and a

lack of self-defense. *See Morrow*, 834 N.W.2d at 730; (Doc. No. 13-1 at 124–29).

Although the State accurately notes that Morrow did not state or otherwise cite to any

authority suggesting that his federal constitutional rights had been violated, its position

on procedural default cannot be squared with the Eighth Circuit's holding that "[a]ny

challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily

a due process challenge to the conviction" sufficient to exhaust a federal claim in state

court. *Satter v. Leapley*, 977 F.2d 1259, 1262 (8th Cir. 1992). Accordingly, this Court

concludes that Morrow has properly exhausted his sufficiency claims in state court.

Nevertheless, because the Minnesota Supreme Court rejected those claims on the

merits, Morrow is not entitled to federal habeas relief unless, at a minimum, he can

overcome the highly deferential standards mandated by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA") for evaluating state court rulings. *See Renico v.

Lett*, 559 U.S. 766, 773 (2010). Under AEDPA, a federal court may not grant habeas

relief on a claim adjudicated on the merits in state court unless the state court's decision

was "contrary to, or involved an unreasonable application of, clearly established [f]ederal

law, as determined by the Supreme Court of the United States," or "based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law set forth by the Supreme Court, or arrives at a result that differs from Supreme Court precedent in the face of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). An "unreasonable application" of clearly established federal law, by contrast, occurs when "the state court correctly identifies the governing legal principle" from the relevant Supreme Court decisions "but unreasonably applies it to the facts of the particular case." *Id.* The key question is whether the state court's application of Supreme Court precedent is "objectively unreasonable," not whether a federal court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico*, 559 U.S. at 773 (quotation omitted).

AEDPA thus "erects a formidable barrier to federal habeas relief" by requiring state prisoners to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 786–87 (2011)). So long as "fairminded jurists could disagree on the correctness of the state court's decision," AEDPA precludes federal habeas relief. *Richter*, 562 U.S. at —, 131 S. Ct. at 786 (quotation omitted).

Under established due process principles, "evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'" *Parker v. Matthews*, — U.S. —, 132 S. Ct. 2148, 2152 (2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). For purposes of federal constitutional law, the question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt," not whether it "rule[s] out every hypothesis except that of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318, 326. In other words, while "[t]he facts and circumstances relied on by the government must be consistent with guilt, [] they "need not be inconsistent with any other hypothesis." *United States v. Jenkins*, 758 F.3d 1046, 1050 (8th Cir. 2014) (quotation and ellipsis omitted).

To convict Morrow of first-degree premeditated murder (or attempted first-degree premeditated murder), the prosecution had to prove that he caused (or attempted to cause) "the death of a human being with premeditation and with intent to effect the death of the person or of another." Minn. Stat. § 609.185(a)(1) (2010). "[A] finding of premeditation requires evidence that the defendant formed the intent to kill and then deliberated on that decision," which, in turn, demands that "some appreciable time" have elapsed "between when the defendant form[ed] the intent to kill and when the killing takes place." *State v. Moore*, 846 N.W.2d 83, 87 n.1 (Minn. 2014). Since premeditation is "a state of mind generally proved circumstantially by drawing inferences from a defendant's words and actions in light of the totality of the circumstances," Minnesota courts "have recognized three categories of evidence that are relevant to an inference of premeditation": (1) planning activity, including prior possession of the murder weapon and attempts to conceal evidence; (2) motive, including evidence that the defendant was angry with the

victim; and (3) the nature of the killing, including the number of times the defendant used the murder weapon, the length and severity of the attack, and whether the defendant failed to render aid to the victim. *State v. Hurd*, 819 N.W.2d 591, 599–601 (Minn. 2012). Furthermore, under Minnesota law, "a person may act in self-defense if he or she reasonably believes that force is necessary and uses only the level of force reasonably necessary to prevent the bodily harm feared."[5] *State v. Devens*, 852 N.W.2d 255, 258 (Minn. 2014). Once the defendant comes "forward with evidence to support a claim of self-defense," the burden falls on the prosecution to disprove that defense beyond a reasonable doubt. *Id.*

In rejecting Morrow's sufficiency claims on direct appeal, the Minnesota Supreme Court found that "the State presented ample evidence to establish that Morrow acted with premeditation and did not act in self-defense." *Morrow*, 834 N.W.2d at 730. Morrow has neither alleged nor demonstrated that the state court's decision was contrary to, or involved an objectively unreasonable application of, clearly established *federal* law.[6]

---

[5]    Specifically, a viable claim of self-defense under Minnesota law consists of four elements: "(1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger." *Devens*, 852 N.W.2d at 258 (ellipsis omitted).

[6]    Although the Minnesota Supreme Court did not cite any relevant federal precedent in disposing of Morrow's claims, that omission does not render its decision inconsistent with clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that "so long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," state courts need not cite or even be aware of the relevant federal precedents for AEDPA to apply).

Throughout his petition and supporting briefs, Morrow argues that the evidence was insufficient to show premeditation or the absence of self-defense under Minnesota's heightened standard for convictions based on circumstantial evidence. (*See* Doc. No. 1 at 7–8; Doc. No. 2 at 6–18; Doc. No. 18 at 9, 11–12.) That state standard, unlike the federal constitutional one, demands that the evidence is not only "consistent with the hypothesis that the accused is guilty," but also "inconsistent with any other rational hypothesis except that of guilt." *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010); *see also State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012) ("We apply heightened scrutiny when reviewing . . . verdicts based on circumstantial evidence. . . . The circumstances proved must be consistent with a hypothesis that the defendant is guilty and must be inconsistent with any other rational hypothesis."). When conducting habeas review, however, federal courts "do not evaluate whether the evidence was sufficient under state law, because errors of state law are not cognizable in federal habeas courts." *Nance v. Norris*, 392 F.3d 284, 289 (8th Cir. 2004); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. . . . In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (quotation and citations omitted).

The only question properly before this Court is whether the Minnesota Supreme Court's decision was inconsistent with clearly established federal law, which unlike Minnesota law requires only that the evidence rationally support a finding of guilt beyond a reasonable doubt, not that it exclude every reasonable hypothesis other than guilt. *See*

*Jackson*, 443 U.S. at 318, 326; *Jenkins*, 758 F.3d at 1050. The answer to that question is

no, as fairminded jurists could certainly conclude that the evidence, when viewed in the

light most favorable to the prosecution, was sufficient to allow a rational juror to find that

Morrow acted with premeditation and not out of self-defense. As the Minnesota Supreme

Court trenchantly observed, a finding of premeditation was "strongly support[ed]" by the

fact that Morrow "drove to his house, retrieved an AK-47 semiautomatic assault rifle,

returned to the party, fired 15 shots at the three victims, pointed the weapon at 'center

mass,' failed to render aid to the victims, and hid the weapon after the crime." *Morrow*,

834 N.W.2d at 722. Those same circumstances rationally support a finding beyond a

reasonable doubt that Morrow's actions were not undertaken in self-defense. Whether or

not the state court's decision was consistent with Minnesota's heightened standard for

circumstantial evidence — a question this Court is not at liberty to decide — it did not

involve an objectively unreasonable application of clearly established federal law.

AEDPA therefore precludes federal habeas relief on Morrow's sufficiency claims.

## CONCLUSION

Because Ground One of Morrow's petition is procedurally defaulted, and Grounds

Two and Three are not sufficient to overcome AEDPA's highly deferential standards, this

Court recommends that the State's motion to dismiss be granted and that Morrow's

§ 2254 petition be denied.

## CERTIFICATE OF APPEALABILITY

A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is

granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1). A COA may only

21

issue if the petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). For claims rejected on the merits, this standard demands a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where, however, a constitutional claim is denied on procedural grounds, a petitioner must establish that reasonable jurists would find it debatable whether (1) the district court was correct in its procedural ruling and (2) the petition states a valid claim of the denial of a constitutional right. *Id.* For the reasons previously outlined, reasonable jurists would not find it debatable whether Morrow's first claim for relief is procedurally defaulted or whether his remaining two claims can surmount AEDPA's formidable barrier to relief. This Court therefore recommends that Morrow not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Morrow's motion to amend his habeas petition (Doc. No. 21) be **DENIED AS MOOT**;

2.    Morrow's motion for default judgment (Doc. No. 22), including its request to strike the State's motion to dismiss, be **DENIED**;

3.    The State's motion to dismiss the petition (Doc. No. 11) be **GRANTED**;

4.    Morrow's petition (Doc. No. 1) be **DENIED**; and

5.    No certificate of appealability be granted in this matter.

Date: February 10, 2015

s/ Becky R. Thorson
_____
BECKY R. THORSON
United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 24, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief with **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3,500 words. A district judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Eighth Circuit Court of Appeals.